Case No. __2:24-mj-475__

## AFFIDAVIT

I, Daniel Rutherford, being duly sworn, depose and state the following:

### INTRODUCTION

1. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since November of 2023. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516. I am empowered to investigate, to make arrests with or without warrants and to execute search warrants under the authority of 21 U.S.C. § 878. I hold a Bachelor's Degree in Aeronautics from Embry-Riddle Aeronautical University. I have undergone the following training:

   a. I have completed the DEA Basic Agent Training Academy, which is a 17-week course in Quantico, VA that included (but was not limited to) training in the following areas: surveillance, undercover operations, report writing, confidential source management, drug identification, legal principles, search warrant operations, case initiation and development, interview and interrogation, defensive tactics, physical training, and firearms proficiency. I continue to receive training on a daily basis by conducting criminal drug investigations and drawing from the expertise of agents more experienced than myself.

   b. Additionally, as a DEA Special Agent, my experience includes participating in criminal arrests, conducting physical surveillance, trash seizures,

1

searching for evidence during court-authorized search warrants, and authoring search warrants as well as subpoenas.

## PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of an application for a federal arrest warrant and complaint against Sir Jeffrey **CARROLL**. My knowledge of this investigation is based upon my own personal observations, as well as the observations and investigations conducted by other law enforcement officers and investigators concerning the facts and circumstances involved in the subject investigation. I have not included in this Affidavit all the facts known to me, but only that information sufficient to establish probable cause to believe the following;

- Sir Jeffrey **CARROLL** has committed a violation of Title 21, United States Code, Section 846, conspiracy to possess with the intent to distribute a detectable amount of fentanyl.

## SUMMARY OF PROBABLE CAUSE

1. In June of 2024, members of the Drug Enforcement Administration (DEA) Columbus District Office began an investigation into the Sir Jeffrey **CARROLL** ("**CARROLL**") Drug Trafficking Organization ("DTO") operating in the Southern District of Ohio. Investigators received information from a Human Confidential Source ("**CS1**") in reference to the **CARROLL DTO**. **CS1** stated that **CARROLL** is a multi-kilogram level distributor operating in the Columbus, Ohio and Chillicothe, Ohio areas, within the Southern District of Ohio. In July of 2024, investigators were able to infiltrate this organization by inserting another Confidential Source ("**CS2**") into the **CARROLL DTO**. **CS1** and **CS2** has provided information that has been independently corroborated

2

and led to the seizure of narcotics and arrests and is thus believed to be reliable and credible.

On or about July 3, 2024, investigators utilized **CS2** to conduct a controlled purchase of approximately 1,000 fentanyl pills from **CARROLL** in Columbus, Ohio, in the Southern District of Ohio. During recorded calls between **CS2** and **CARROLL**, **CS2** states that they are looking for "Blues" and was looking to purchase 1,000 of them for $1,000. Investigators know that "Blues" are another term for "Blue M30s", also known as counterfeit fentanyl pills. Investigators directed and oversaw the controlled purchase of 1,000 fentanyl pills by utilizing **CS2**, which was purchased from **CARROLL**. After the controlled purchase of the 1,000 fentanyl pills, investigators seized the pills as evidence from **CS2**. The fentanyl pills were blue and had the emblem "M" and "30" pressed onto them. Investigators know this is consistent with the appearance of counterfeit fentanyl pills. During a field test, the pills indicated a positive result for the presence of fentanyl. The fentanyl pills were then processed as evidence and sent to the North Central Laboratory for analysis where the pills were tested and yielded a positive result for the presence of fentanyl. After the controlled purchase, investigators continued to surveil **CARROLL**, who was driving a 2016 grey Ford Explorer, bearing Ohio license plate HZT3130, until he drove into a residential housing development, near Winchester Meadows Drive in Canal Winchester, Ohio. As this investigation continued and additional surveillance was conducted on **CARROLL**, investigators have observed **CARROLL** travel to and enter a residence located at **5518 Sweet Gale Court in Canal Winchester, Ohio** (hereinafter, "**PREMISES**") by opening the garage door, from the inside of his vehicle, to the residence and pulling his vehicle into the garage and closing

3

the garage door. Investigators have observed **CARROLL** staying at this residence for days at a time. Investigators are aware that the **PREMISES** is in the same neighborhood where investigators terminated surveillance after the initial controlled purchase on July 3, 2024.

2. On or about July 30, 2024, investigators observed **CARROLL** exit 147 North Hickory Street and travel utilizing a 2012 white Audi A8 L, bearing Ohio license plate JYZ2247, to a nearby location where he met with an unknown white male driving a Kia. The unknown white male exited his vehicle and reached into **CARROLL's** vehicle and quickly returned to the Kia. **CARROLL** and the unknown white male then left the area traveling in different directions. **CARROLL** was then surveilled directly back to 147 North Hickory Street. Based on investigators training and experience, and knowledge of this activity, the manner in which this short duration occurred is indicative of drug trafficking. After **CARROLL**'s interactions with the unknown white male driving the Kia, **CARROLL** returned to 147 North Hickory Street and parked the Audi in the detached garage behind the residence. Later that afternoon, investigators observed **CARROLL** exiting 147 North Hickory Street and entering into the Audi, which was parked in the garage, and departed the area. Investigators surveilled **CARROLL** through Chillicothe onto 104 North toward Columbus, Ohio. Investigators then received reliable information that **CARROLL** was on his way to receive approximately 10 kilos of cocaine from a semi-truck. CARROLL was to obtain the kilograms from a truck driver located at 5991 South High Street, Lockbourne, Ohio, 43137, however plans changed for CARROLL to travel to his girlfriend's residence located at the **PREMISES**, to obtain the

4

kilograms from an unknown courier(s). Investigators continued to follow **CARROLL** from 147 North Hickory Street, Chillicothe, Ohio, 45601, directly to the **PREMISES.**

3.      Upon arrival of **CARROLL** to the **PREMISES**, investigators observed two unknown Hispanic males and one unknown black male exit the **PREMISES** into the garage and interact shortly with **CARROLL** in the garage before all four individuals entered into the **PREMISES** through the interior garage door. Shortly after, all four individuals exited the **PREMISES** through the interior garage door into the garage. **CARROLL** was then observed entering the same Audi from earlier in the surveillance which was parked in the driveway of the **PREMISES**. **CARROLL** moved the Audi out of the way, thus allowing a grey Ford F-150 which was parked inside the garage of the **PREMISES** to exit. The two Hispanic males and black male entered into the grey Ford F-150 bearing Tennessee license plate BQQ 6112, registered to PV Holding Corp. Investigators then observed the Ford F-150 depart from the garage of the **PREMISES** and surveillance was then established on the Ford F-150 containing the two Hispanic males and one black male and the **PREMISES**.

4.      Continuing on the same date, Ohio State Highway Patrol Trooper Mike Wilson initiated a traffic stop for a traffic violation on the Ford F-150 in Columbus, Ohio, within the Southern District of Ohio. Based on physical surveillance, the Ford F-150 did not make any stops or meet with anyone between the **PREMISES** and the traffic stop. Upon making the stop, Trooper Wilson identified the driver as Jaime CHAIDEZ-CAMBEROS, the front passenger as Jose Luis TORRES and the backseat passenger as Kevin Justin REED. During the traffic stop, Trooper Wilson deployed a drug sniffing K-9 to conduct a free air sniff of the vehicle which resulted in the positive alert for the

5

presence of drugs. During a probable cause search of the vehicle, Trooper Wilson located and seized a backpack containing approximately five kilograms of suspected cocaine, which was located under the backseat where REED was sitting. Investigators conducted a field test on the suspected cocaine, which generated a positive test for the presence of cocaine. All three occupants of the vehicle were detained, fingerprinted, and interviewed.

5. Later in the evening, through continued physical surveillance of the **PREMISES**, investigators observed **CARROLL** exit from the garage of the **PREMISES** and travel to a parking lot in a nearby location. Investigators then observed **CARROLL** meet with an unknown individual(s) driving a white Chrysler. **CARROLL's** vehicle and the Chrysler pulled up next to each other so both driver's windows were together. After a short meet, **CARROLL** and the Chrysler parted ways. When **CARROLL** and the driver of the Chrysler left the area, each appeared to be conducting counter-surveillance on law enforcement. For example, **CARROLL** squared the block of an apartment complex and the Chrysler circled the Giant Eagle parking lot. Based on investigators training and experience, and knowledge of this activity, the manner in which this short duration occurred is indicative of drug trafficking.

6. On or about September 10, 2024, CS2 and **CARROLL**, utilizing 614-402-1424, through a series of recorded phone calls, **CARROLL** agreed to meet CS2 and complete a controlled purchase for approximately 1,200 fentanyl pills for $3,500 in U.S. Currency. Investigators from the CDO observed **CARROLL** through physical surveillance depart the **PREMISES** and make a brief stop at Big Mama's Playhouse & Learning at 4433 Crossroads Center, Columbus, Ohio, 43232, **CARROLL** was observed meeting with an unknown female (UF1) before arriving, driving a 2019 Mercedes-Benz

C63s AMG bearing an Ohio temporary registration S440047, and park at the agreed meet location near the CS's vehicle. Shortly after, Investigators observed **CARROLL** exit the Mercedes and enter into the CS's vehicle. During the interaction between **CARROLL** and the CS, investigators were able to confirm that the CS provided $3,500 in recorded Official Advance Funds (OAF) to **CARROLL**, which **CARROLL** provided the CS with approximately 1,200 fentanyl pills. After the exchange between **CARROLL** and the CS, **CARROLL** exited the CS's vehicle and entered back in the Mercedes before departing the area. While maintaining visual on the CS, Investigators followed the CS to a pre-determined location and seized the fentanyl pills. The fentanyl pills were blue and had the emblem "M" and "30" pressed onto them. Investigators know this is consistent with the appearance of counterfeit fentanyl pills. During a field test, the pills indicated a positive result for the presence of fentanyl.

7. On or about September 30, 2024, investigators established surveillance outside of 477 E Hinman Avenue, Columbus, Ohio, after observing **CARROLL's** black Mercedes parked in the back of the residence. At approximately 6:40 p.m., investigators observed **CARROLL** appear from the area of 477 E Hinman Avenue and enter into the black Mercedes bearing Ohio license plate KKT1881. At approximately 6:50 p.m., Columbus Police conducted a traffic stop on the Mercedes for a traffic infraction on 670 East. During the traffic stop Columbus Police deployed a K-9 to conduct a free air sniff of the vehicle which yielded a positive alert for the presence of drugs. During a probable cause search of the vehicle, officers recovered suspected fentanyl pills. Officers placed **CARROLL** under arrest. **CARROLL** was transported to the Columbus District Office for processing. Investigators attempted to interview **CARROLL**. At that time

7

**CARROLL** requested an attorney. Investigators transported **CARROLL** to the Franklin County Sherriff's Office Jail, where he was released into their custody.  Investigators applied for and were granted State of Ohio search warrants for 5518 Sweet Gale Court, Canal Winchester, Ohio, and 477 E Hinman Avenue, Columbus, Ohio. Investigators located and seized a kilo press, a loaded AR-15 long gun with a drum magazine, and a Smith & Wesson handgun from 5518 Sweet Gale Court. Investigators located and seized 270 gross grams of white powder testing positive for fentanyl, a pill press, a stolen Glock 27 with an automatic Glock switch loaded with an extended magazine, and a pill press from 477 E Hinman Avenue.

## CONCLUSION

1. Based upon this information, your affiant believes probable cause exists that Sir Jeffrey CARROLL has violated 21 U.S.C. §§ 846 conspiracy to possess with the intent to distribute a detectable amount of fentanyl.

_____
Daniel Rutherford
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
this  1st   day of October 2024.

_____
Honorable Chelsey Vascura
United States Magistrate Judge